**IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| TOKIO MARINE SPECIALTY INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) | Case No. 18-cv-3055 |
| v. ) ) | |
| SPRINGFIELD SHOOTING CENTER, INC. and STEVEN SWARTZ, ) ) ) | |
| Defendants. ) | |

**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES the Plaintiff, TOKIO MARINE SPECIALTY INSURANCE COMPANY, by and through its undersigned counsel, HEPLERBROOM, LLC, and for its First Amended Complaint for Declaratory Judgment against the Defendants, SPRINGFIELD SHOOTING CENTER, INC. and STEVEN SWARTZ, states and alleges as follows:

**THE PARTIES**

1. Plaintiff, Tokio Marine Specialty Insurance Company ("Tokio Marine") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at One Bala Plaza, Suite 100, Bala Cynwyd, Pennsylvania.

2. At all times relevant, the Defendant, Springfield Shooting Center, Inc. ("SSC"), was a domestic corporation organized and existing under the laws of the State of Illinois with its principal place of business located at 4885 Industrial Drive, Springfield, Sangamon County, Illinois.

3. At all times relevant, SSC's sole shareholders and corporate officers were John Jackson and Kathryn Jackson, who reside in Springfield and are domiciliaries and citizens of the State of Illinois.

4. At all times relevant, the Defendant, Steven Swartz ("Swartz") resided at 3117 Kemper Drive in Springfield, Illinois, and was and is a domiciliary and citizen of Illinois.

5. At all times relevant, Swartz held legal title to the parcel of improved real property located at 4885 Industrial Drive in Springfield, Illinois ("Premises").

6. On or about September 29, 2006, Swartz executed a mortgage on the Premises in the amount of $425,000.00, naming Illinois National Bank as the mortgagee.

7. On or about November 29, 2014, Defendant Swartz executed an amended mortgage on the Premises in the amount of $343,792.04, again naming Illinois National Bank as the mortgagee ("Amended Mortgage").

8. The Amended Mortgage, which was recorded with the Sangamon County Recorder of Deeds on or about December 10, 2014, has not been released and Defendant Swartz remains a mortgagor thereunder.

## JURISDICTION AND VENUE

9. Tokio Marine brings this insurance coverage action pursuant to Fed. R. Civ. P. 57 and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), for the purpose of determining the rights and indemnification obligations, if any, under a policy of commercial insurance for SSC and Swartz's claim for benefits thereunder relative to a September 6, 2017 fire loss.

10. Tokio Marine also joins Swartz as a necessary party pursuant to Fed. R. Civ. P. 19(a)(1)(B), as Swartz claims an interest relating to the underlying insurance policy and the matter is so situated that disposing of the action in his absence may, as a practical matter, leave Tokio Marine subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. For jurisdictional purposes, Plaintiff is a citizen of both Delaware and Pennsylvania, while both Springfield and Swartz are citizens of Illinois.

11.     This Court has jurisdiction of this civil action pursuant to 28 U.S.C. §1332(a)(1), in that Springfield and Swartz are each seeking indemnity damages in excess of $75,000.00 under the Policy, and this action is between citizens of different states.

12.     Venue is proper in this district pursuant to 28 U.S.C. 1391(a)(1) and (a)(2), in that the acts and claim activity occurred, and the subject real property giving rise to this action are situated within Sangamon County, Illinois, which lies within the geographical boundaries of the United States District Court for the Central District of Illinois.

13.     This matter is ripe for adjudication as there is an actual and justiciable controversy between the parties as to the amounts owed, if any, under the Policy.

## FACTUAL BACKGROUND

14.     On or about July 27, 2017, Springfield, through its independent insurance agent, Kollhoff & Associates, submitted an application for commercial insurance to Plaintiff. (A true and accurate copy of SSC's application is attached and incorporated as Ex. A)

15.     The application identifies SSC as the sole named insured. (Ex. A, pg. 5)

16.     The "Additional Interest" section of the application form contains three enumerated categories – lender's loss payable, loss payee and mortgagee. (Ex. A, pg. 5)

17.     At all times relevant, the only "Additional Interest" risk that Tokio Marine underwrites and issues property insurance products for are lender's loss payable, loss payee and mortgagee.

18.     Notwithstanding, SSC, or its agent, altered the "Additional Interest" section of the application form and added a fourth category – land contract seller –and listed Defendant Swartz thereon. (Ex. A, pg. 5)

19. On or about September 29, 2006, Swartz executed a mortgage on the Premises in the amount of $425,000.00, naming Illinois National Bank as the mortgagee.

20. On or about November 29, 2014, Defendant Swartz executed an amended mortgage on the Premises in the amount of $343,792.04, again naming Illinois National Bank as the mortgagee ("Amended Mortgage").

21. The Amended Mortgage, which was recorded with the Sangamon County Recorder of Deeds on or about December 10, 2014, has not been released and Defendant Swartz remains a mortgagor thereunder

22. Tokio Marine issued a policy of commercial insurance to SSC for the period August 10, 2017 through August 10, 2018, bearing Policy No. PPK1697698 ("Policy"). (A true and accurate copy of the Policy is attached and incorporated as Ex. B)

23. At all times when the Policy was in force and effect, SSC was scheduled as the sole "Named Insured" thereunder. (Ex. B)

24. At all times when the Policy was in force and effect, Defendant Swartz was never scheduled as a Named Insured, Additional Insured or any other capacity thereunder.

25. The Policy provided insurance, subject to its terms, conditions, exclusions and endorsements, for SSC's business, business personal property and the Premises.

26. A copy of the policy was delivered to SSC on or about August 21, 2017.

27. On September 6, 2017, at approximately 1:00 a.m., a fire occurred at the Premises

28. On September 5, 2017, the day before the fire, John Jackson, and SSC's employees Stacey Reyes and Chad Murphy were present at the Premises

29. On September 5, 2017, at approximately 8:30 p.m., after employees Stacey Reyes and Chad Murphy departed, John Jackson removed items of personal property, including business personal property, from the Premises and placed them in a vehicle.

30. On September 5, 2017, the day before the fire, the Premises was outfitted with an alarm system.

31. When he departed the Premises on the evening of September 5, 2017, John Jackson did not arm the alarm system to an active status, despite SSC's custom and practice to arm the system upon closure of the business for the day.

32. When he departed the Premises on the evening of September 5, 2017, John Jackson left the front door to the Premises unlocked, despite SSC's custom and practice to lock the Premises upon closure of the business for the day.

33. Upon information and belief, on September 6, 2017, at approximately 12:56 a.m., video captured an individual entering the Premises through the unlocked front door, while not carrying anything, and leaving approximately eight (8) minutes later.

34. Also upon information and belief, when the individual left the Premises at approximately 1:04 a.m. on September 6, 2017, video captured significant smoke escaping the Premises which was the beginning of the fire that caused the claimed damage to the Premises and SSC's business personal property.

35. Upon further information and belief, when the individual left the Premises at approximately 1:04 a.m. on September 6, 2017, video indicated that the individual was not carrying anything, and did not remove any firearms, computers, or other personal property belonging to SSC.

36. The Springfield Fire Department arrived at the Premises at approximately 1:21 a.m. on September 6, 2017, at which times all points of ingress and egress at the Premises were observed to be locked and secured, with the exception of the unlocked front door.

37. SSC reported the fire loss to Kollhoff Insurance Agency on September 6, 2017, who in turn notified Tokio Marine, initiating Claim No. 1108345 (the "Claim").

38. On September 12, 2017, SSC retained Dan Long of Gateway Adjusters, Inc. as its public adjuster in connection with the Claim.

39. Tokio Marine then initiated its investigation and adjustment of the Claim, under two reservation of rights letters, respectively issued to on September 12, 2017 and October 11, 2017.

40. On November 6, 2017, pursuant to the terms and conditions of the Policy, Tokio Marine requested SSC execute a Sworn Statement in Proof of Loss.

41. On or about December 22, 2017, SSC, by and through its owner and principal, John Jackson, submitted an incomplete, unsigned Proof of Loss. (A true and accurate copy of the incomplete proof of loss is attached and incorporated as Ex. C)

42. On January 19, 2018, SSC, by and through its owner and principal, John Jackson, submitted an executed Sworn Statement in Proof of Loss (the "Proof of Loss"). (A true and accurate copy of the Proof of Loss is attached and incorporated as Ex. D)

43. By way of the Proof of Loss, SSC claimed the Policy limit of $1,500,000 for damage to the Premises, and the Policy limit of $125,000 for damage and/or theft of business personal property for an aggregate replacement cost claim of $1,625,000. (Ex. D, Section 7)

44. By way of the Proof of Loss, SSC claimed $1,620,000 for the actual cash value of the Claim under the Policy. (Ex. D, Section 11)

45. By way of the Proof of Loss, the SSC made no allocation for applicable depreciation to either the Premises or the business personal property. (Ex. D, Section 11)

46. By way of the Proof of Loss, the SSC claimed that a burglary and fire loss occurred at the Premises on September 6, 2017. (Ex. D, Section 1)

47. By way of the Proof of Loss, the SSC claimed that the cause and origin of the loss was a burglary to the insured's business and a fire that was set by the burglars. (Ex. D, Section 1)

48. SSC made multiple, material misrepresentations in Proof of Loss that relate to the Claim.

49. On December 20, 2017, pursuant to the terms and conditions of the Policy, Tokio Marine issued the SSC a demand to provide various documents material and relevant to the Claim, and to appear for an examination under oath. (A true and accurate copy of the December 20, 2017 letter is attached and incorporated as Ex. E)

50. On January 29, 2018 and February 12, 2018, John Jackson appeared on behalf of the SSC for an examination under oath. (True and accurate copies of the transcripts of the January 29, 2018 and February 12, 2018 Examinations under Oath are respectively attached and incorporated as Exhibits F and G)

51. On February 12, 2018, Kathryn Jackson appeared on behalf of the SSC for an examination under oath. (A true and accurate copy of the transcript of the February 12, 2018 Examination under Oath is attached and incorporated as Exhibit H)

52. John Jackson, in his capacity as an authorized representative, owner and officer of Springfield, made material misrepresentations in the January 29, 2018 and February 12, 2018 examinations under oath that related to the Claim, activities prior to and after the fire, and the damages claimed as a result of the fire.

53.     Kathryn Jackson, in her capacity as an authorized representative, owner and officer of Springfield, made material misrepresentations in the February 12, 2018 examination under oath that related to the Claim, activities prior to and after the fire, and the damages claimed as a result of the fire.

54.     On April 9, 2018, Defendant Swartz, through his legal counsel, advised Tokio Marine that he was asserting standing under the Policy and making a claim as a loss payee (A true and accurate copy of Swartz's attorney's letter is attached and incorporated as Exhibit I)

## COUNT ONE
*(SSC - No Coverage Due to Intentional Acts)*

55.     Tokio Marine adopts and realleges the allegations of Paragraphs 1 through 54 as Paragraph No. 55 as though the same were fully set forth herein.

56.     As a result of the fire, Springfield submitted a Claim for damage to the Premises and business personal property. (Ex. C, Section 6-11)

57.     At all times relevant, the Policy states, in part, as follows:

IL 01 18 02 017

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**ILLINOIS CHANGES**

> **D.** For the Commercial Property Coverage Part and the Standard Property Policy, the following exclusion and related provisions are added to Paragraph **B.2.** Exclusions in the Cases of Loss Forms and to any Coverage Form or policy to which a Causes of Loss Form is not attached:
>
> > **1.** We will not pay for loss or damage arising out of any act an insured commits or conspires to commit with the intent to cause a loss.
> >
> > In the event of such loss, no insured is entitled to coverage, even insureds who did not commit or conspire to commit the act causing the loss. (Ex. A, pg. 55)

\*\*\*

58.     In connection with its investigation of Springfield's Claim, Tokio Marine retained Pyr-Tech to determine the cause and origin of the September 6, 2017 fire at the Premises

59.     Pyr-Tech thereafter undertook a cause and origin investigation, and inspected the Premises on multiple occasions following the fire.

60.     Pyr-Tech's cause and origin investigation confirmed four separate and uncommunicated fires within the Premises

61.     Debris samples collected from all four origin areas in the Premises tested positive for the presence of accelerants, including gasoline.

62.     Pyr-Tech's cause and origin investigation confirmed there were no competent accidental ignition sources in any of the four separate and unconnected origin areas to have caused any of the fires.

63.     Pyr-Tech's cause and origin investigation confirmed each of the fires resulted from the intentional application of an open flame to the vapors of gasoline intentionally applied in the origin areas.

64.     Pyr-Tech concluded and opined that the fire at the Premises was incendiary.

65.     The Springfield Fire Department conducted its own investigation into the cause and origin of the Springfield's fire and determined the same to be incendiary and/or arson.

66.     SSC, by and through its owners and principals, John Jackson and Kathryn Jackson, had the motive, means and opportunity to intentionally set the fire that occurred at the Premises and did, in fact, conspire to and intentionally set said fire.

67. On September 6, 2017, and the days preceding the fire, the Springfield stored containers of gasoline and kerosene, a propane cylinder, charcoal lighter fluid, and various solvents at the Premises

68. John Jackson was the last individual at the Premises prior to the fire.

69. John Jackson did not activate the security alarm at the Premises upon his departure on the evening of September 5, 2017.

70. John Jackson did not lock the front door to the Premises upon his departure, on the evening of September 5, 2017.

71. SSC, by and through John Jackson, removed business personal property and cash from the Premises on the evening of September 5, 2017, prior to the fire.

72. John Jackson removed a riding lawn mower, which he used in connection with an unincorporated landscaping business that provided a source of supplemental income, from the Premises prior to the fire.

73. SSC, by and through John Jackson and/or Kate Jackson removed computers and/or other business personal property from the Premises before the fire.

74. There was a preplanned effort by or on behalf of Springfield, John Jackson and/or Kathryn Jackson to set fire to the Premises

75. SSC was under financial strain and/or insolvent immediately prior to the September 6, 2017 fire.

76. SSC's owners and officers, John Jackson and Kathryn Jackson were also under financial strain and/or insolvent immediately prior to the September 6, 2017 fire, including their joint and several personal obligations on at least $1,100,000 in outstanding debt.

77. SSC, including its owners and principals, John Jackson and Kathryn Jackson, had the motive to intentionally set the fire that occurred at the Premises and did, in fact, conspire to and intentionally set said fire.

78. The September 6, 2017 fire and ensuing Claim was the result of an act an insured committed or conspired to commit with the intent to cause a loss.

79. Any and all potential coverage under the Policy has been voided as a result of the Springfield's intentional and fraudulent conduct as it relates to the Claim and Policy.

WHEREFORE, the Plaintiff, TOKIO MARINE SPECIALTY INSURANCE COMPANY, respectfully requests that this Court, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), enter a declaratory judgment in its favor on Count One of the Complaint and against that that of the Springfield, SPRINGFIELD SHOOTING CENTER, INC., and specifically find, declare and order that:

(A) Tokio Marine has fully complied with the terms and conditions of the Policy pursuant to the Claim;

(B) No coverage is afforded for the Claim due to Springfield's fraudulent and intentional conduct; and

(C) For any and all other relief that this Honorable Court deems necessary and just.

## COUNT TWO
(SSC - *No Coverage Due to Dishonest or Criminal Acts*)

80. Tokio Marine adopts and re-alleges the allegations of Paragraphs 1 through 79 of Count One as Paragraph No. 65 as though the same were fully set forth herein.

81. At all times relevant, the Policy states, in part, as follows:

COMMERCIAL PROPERTY
CP 10 30 06 07

**CAUSES OF LOSS – SPECIAL FORM**

\* \* \*

**B.    Exclusions**

\* \* \*

    **2.**    We will not pay for loss or damage caused by or resulting from any of the following:

\* \* \*

        **h.**    Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

            **(1)** Acting alone or in collusion with others; or
            **(2)** Whether or not occurring during the hours of employment.

            This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.  (Ex. A, pg. 84)

82.    The September 6, 2017 fire and ensuing Claim was caused and occasioned by dishonest or criminal acts by Springfield, its officers, managers, employees, directors and/or authorized representatives, including, but not limited to John Jackson and Kathryn Jackson.

83.    Any and all potential coverage under the Policy has been voided as a result of the Springfield's dishonest or criminal acts as it relates to the Claim and Policy.

WHEREFORE, the Plaintiff, TOKIO MARINE SPECIALTY INSURANCE COMPANY, respectfully requests that this Court, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), enter a declaratory judgment in its favor on Count Two of the Complaint and against that that of the Springfield, SPRINGFIELD SHOOTING CENTER, INC., and specifically find, declare and order that:

(A)    Tokio Marine has fully complied with the terms and conditions of the Policy pursuant to the Claim;

(B)    No coverage is afforded for the Claim due to Springfield's criminal or dishonest acts; and

(C)   For any and all other relief that this Honorable Court deems necessary and just.

## COUNT THREE
*(SSC - No Coverage Due To Material Misrepresentations)*

84.   Tokio Marine adopts and re-alleges the allegations of Paragraphs 1 through 83 of Counts One and Two as Paragraph No. 69 as though the same were fully set forth herein.

85.   At all times relevant, the Policy states, in part, as follows:

CP 00 90 07 88
**COMMERCIAL PROPERTY CONDITIONS**

\* \* \*

**A.   CONCEALMENT, MISREPRESENTATION OF FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you and any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**(1)**   This Coverage Part;
**(2)**   The Covered Property;
**(3)**   Your interest in the Covered Property; or
**(4)**   A claim under this Coverage Part. (Ex. A, pg. 77)

86.   SSC intentionally concealed and misrepresented material facts concerning the Claim, including but not limited to:

a.   Cause of the loss;

b.   Origin of the loss;

c.   Inventory maintained by Springfield prior to the loss;

d.   Inventory remaining at the Premises after the loss; and

e.   Events and circumstances leading up to the loss.

87. Any and all potential coverage under the Policy has been voided as a result of the Springfield's intentional concealment and misrepresentation of material facts relating to the Claim.

WHEREFORE, the Plaintiff, TOKIO MARINE SPECIALTY INSURANCE COMPANY, respectfully requests that this Court, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), enter a declaratory judgment in its favor on Count Three of the Complaint and against that that of the Springfield and specifically find, declare and order that:

(A) Tokio Marine has fully complied with the terms and conditions of the Policy pursuant to the Claim;

(B) No coverage is afforded for the Claim due to the Springfield's conduct of intentionally concealing and misrepresenting material facts concerning the claimed; and

(C) For any and all other relief that this Honorable Court deems necessary and just.

## COUNT FOUR
*(No Coverage for Swartz Due to Non-Scheduled Status)*

88. Tokio Marine adopts and re-alleges the allegations of Paragraphs 1 through 87 of Counts One through Three as Paragraph No. 88 as though the same were fully set forth herein.

89. At all times relevant, Swartz was not scheduled as a Named Insured, Additional Insured, Loss Payee, Mortgagee or otherwise named as an insured or with an insurable interest in the Policy.

90. As a stranger to the contract of insurance, Swartz is without legal standing to present a claim for monetary benefits thereunder.

WHEREFORE, the Plaintiff, TOKIO MARINE SPECIALTY INSURANCE COMPANY, respectfully requests that this Court, pursuant to the Declaratory Judgment Act, 28 U.S.C. §

2201(a), enter a declaratory judgment in its favor on Count Four of the Amended Complaint and against that that of the Defendant, Steven Swartz, and specifically find, declare and order that:

(A) Tokio Marine has fully complied with the terms and conditions of the Policy pursuant to the Claim;

(B) Defendant Swartz lacks the necessary contractual standing to present a claim for benefits under the Commercial Property portion of the Policy; and

(B) For any and all other relief that this Honorable Court deems necessary and just.

## COUNT FIVE
*(Alternative Count as to Swartz - No Coverage as Loss Payee)*

91. Tokio Marine adopts and re-alleges the allegations of Paragraphs 1 through 90 of Counts One through Three as Paragraph No. 91 as though the same were fully set forth herein.

92. Pursuant to Fed. R. Civ. P. 8(d)(2), Tokio Marine pleads Count Five in the alternative.

93. Upon information and belief, Swartz claims "loss payee" status under the Policy with respect to the Claim.

94. The application for insurance submitted to Tokio Marine identifies Swartz and his interest in the Premises as a "land contract seller" and not a "loss payee."

95. At no point during the Policy period was Swartz scheduled as a "loss payee".

96. Under the terms and conditions of the Policy, the payment rights of a "loss payee" are derivative of the "Named Insured" and subject to any defenses.

97. No coverage exists for any "loss payee" under the Policy, whose rights are derivative of the "Named Insured" and as set forth more fully in Counts One through Three, *supra*, no coverage exists for SSC.

WHEREFORE, the Plaintiff, TOKIO MARINE SPECIALTY INSURANCE COMPANY, respectfully requests that this Court, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), enter a declaratory judgment in its favor on Count Five of the Amended Complaint and against that that of the Defendant, Steven Swartz, and specifically find, declare and order that:

(A)  Tokio Marine has fully complied with the terms and conditions of the Policy pursuant to the Claim;

(B)  Defendant Swartz lacks the necessary contractual standing to present a claim for benefits under the Commercial Property portion of the Policy; and

(C)  For any and all other relief that this Honorable Court deems necessary and just.

Respectfully submitted,

**TOKIO MARINE SPECIALTY INSURANCE COMPANY,**

Date: November 16, 2018    By:    /s/ James P. DuChateau, Esq.
One of Plaintiff's Attorneys

Rick Hammond, Esq.
James P. DuChateau, Esq.
Amy Johnson, Esq.
HEPLER BROOM, LLC
30 N LaSalle St., Ste. 2900
Chicago, Illinois 60602
Phone No. (312) 230-9100
Fax No. (312) 230-9201
Email: rick.hammond@heplerbroom.com
Email: james.duchateau@heplerbroom.com
Email: amy.johnson@heplerbroom.com
**COUNSEL FOR TOKIO MARINE**

**CERTIFICATE OF SERVICE**

  I, James P. DuChateau, hereby certify that on <u>November 16, 2018</u> a true and correct copy of ***Tokio Marine Specialty Insurance Co.'s Amended Complaint for Declaratory Judgment*** was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the all counsel of record who have heretofore appeared in this matter.

        /s/ <u>James P. DuChateau</u>