## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **TOKIO MARINE SPECIALTY INSURANCE COMPANY** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **No. 18-CV-03055** |
| | ) | |
| **SPRINGFIELD SHOOTING CENTER, INC. and STEVEN SWARTZ** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. District Judge.**

Before the Court is Plaintiff Marine Specialty Insurance Company's Motion for Default Judgment (d/e 119). Plaintiff has shown it is entitled to the full relief requested. Therefore, Plaintiff's Motion for Default Judgment (d/e 119) is GRANTED.

## I.    BACKGROUND

Plaintiff, Tokio Marine Specialty Insurance Company ("Tokio Marine"), is a corporation which provides insurance coverage. (d/e 30, p. 1). Defendant Springfield Shooting Center, Inc. ("Springfield

Shooting Center") was a domestic corporation which was organized and existed under the law of the State of Illinois with its principal place of business at 4885 Industrial Drive, Springfield, Illinois. Defendant Steven Swartz owns and holds legal title to the real property located at 4885 Industrial Drive ("Premises"). Defendant Steven Swartz was selling the real property located at this address to Springfield Shooting Center's principals John and Kathryn Jackson on an installment land sales contract at the time of the incidents at issue.

On November 16, 2018, Plaintiff filed an Amended Complaint for Declaratory Judgment, seeking an order declaring that Defendants are not entitled to any coverage given their intentional actions, material misrepresentations, or lack of standing. (d/e 30). The Plaintiff proceeded on five claims, the background of each is discussed below.

On or about July 27, 2017, Springfield Shooting Center, Inc. submitted an application for commercial insurance, through its independent insurance agent, to Plaintiff Tokio Marine Specialty Insurance Company ("Tokio Marine"). (d/e 30, p. 3). Springfield Shooting Center is named as the sole insured on this application.

(d/e 30, Exhibit A). Plaintiff issued a commercial insurance policy to Springfield Shooting Center for the period of August 10, 2017, through August 10, 2018, Policy No. PPK1697698. Id. at p. 4. A copy of this policy was delivered to Springfield Shooting Center on or about August 21, 2017.

On September 6, 2017, at approximately 1 a.m. a fire occurred at Springfield Shooting Center. Video footage of the premises captured an individual entering the building, and when the individual left the building, there was significant smoke escaping, indicating a fire. Id. at p. 5. Video footage indicated the person who left the building was not carrying anything, including firearms, computer, or other personal property. Springfield Shooting Center reported the fire and losses to Kolhoff Insurance Agency on September 6, 2017, who notified Plaintiff which initiated Claim No. 1108345. Id. at p. 6.

Thereafter, Tokio Marine initiated an investigation and adjustment of the Claim, pursuant to two reservation of rights letters issued in September and October 2017. Id. On or about December 22, 2017, Springfield Shooting Center, by and through its owner,

John Jackson, submitted a Proof of Loss statement which Tokio Marine deemed incomplete and unsigned. (d/e 30, p. 6, Exhibit C).

Springfield Shooting Center claimed in its Proof of Loss that the cause and the origin of the loss was a burglary and arson on September 6, 2017. Id. Further, Springfield Shooting Center claimed the policy limit of $1,500,000 for damage to the premises and the policy limit of $125,000 for damage and/or theft of business personal property for a total cost claim of $1,625,000. (d/e 30, Exhibit D). On April 9, 2018, Defendant Swartz, through counsel, advised Tokio Marine that he was asserting standing under the policy and making a claim as a loss payee. (d/e 30, p. 8).

After Plaintiff filed its Amended Complaint, Defendant Springfield Shooting Center was initially represented by counsel. On January 3, 2018, Springfield Shooting Center answered Plaintiff's Amended Complaint and asserted a counterclaim for breach of contract, seeking policy benefits. (d/e 38). However, on February 28, 2019, counsel for Springfield Shooting Center moved to withdraw. (d/e 44). On March 1, 2019, Magistrate Judge Schanzle-Haskins granted counsel's motion to withdraw and required Defense counsel

file a proof of service to Springfield Shooting Center of the text order the Court entered on that date. Defendant's counsel did so. (d/e 45).

Thereafter, Springfield Shooting Center failed to appear through counsel as ordered by the Court's March 1, 2019 Order and subsequent orders directing Springfield Shooting Center to retain counsel. On April 30, 2019, Tokio Marine filed a Motion for Default Judgment as to Springfield Shooting Center. (d/e 49). At that juncture, the motion was opposed by Defendant/Counter Claimant Swartz as his rights would be prejudiced by the granting of such a motion. (d/e 50). On June 7, 2019, the Court denied Plaintiff's Motion for Default with Leave to refile after the other claims and counterclaims have been resolved. (d/e 62).

On December 16, 2019, the Government filed a Motion to Intervene (d/e 87) and thereafter a Motion to Stay (d/e 89) for the purposes of staying this civil matter so a criminal prosecution of Defendant John Jackson could proceed. On February 13, 2020, the Court granted the Government's Motion to Stay (d/e 91) and this stay remained in place until March 9, 2023.

On March 18, 2024, the Government filed a Notice to the Court regarding the criminal action against Defendant John W. Jackson Jr.

and specifically his death. (d/e 112). On April 19, 2024, the Court *sua sponte* and pursuant to Federal Rule 25(a), dismissed Defendant Jackson from the instant case. On August 8, 2024, Plaintiff filed a Motion for Default Judgment, which is unopposed by all parties except Kathryn Jackson. However, pursuant to Plaintiff's Motion, Ms. Jackson takes no position on this motion. (d/e 30, p. 1).

## II.   LEGAL STANDARD

Plaintiff has moved for an entry of default judgment pursuant to Federal Rule of Civil Procedure 55.  Whether a default judgment should be entered is left to the discretion of the district court. <u>Duling v. Markun</u>, 231 F.2d 833, 836 (7th Cir. 1956).  "There are two stages in a default proceeding: the establishment of the default, and the actual entry of a default judgment.  Once the default is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks." <u>VLM Food Trading Int'l, Inc. v. Illinois Trading Co.</u>, 811 F.3d 247, 255 (7th Cir. 2016) (quoting <u>In re Catt</u>, 368 F.3d 789, 793 (7th Cir. 2004)).

When considering a motion for default judgment, the Court accepts as true the well-pleaded facts set forth in the complaint. <u>Dundee Cement</u>, 722 F.2d at 1323); <u>Green v. Westfield Insurance</u>

Co., 963 F.3d 619, 625 (7th Cir. 2020) (extending the well-pleaded-complaint standard to amended complaints).  An entry of default means that the facts within the complaint can no longer be contested. Black v. Lane, 22 F.3d 1395, 1399 (7th Cir. 1994).  While the factual allegations regarding liability are taken as true, those regarding damages are not.  Wehrs v. Wells, 688 F.3d 886, 892 (7th Cir. 2012). A plaintiff seeking default judgment must still establish entitlement to the relief requested.  In re Catt, 368 F.3d at 793.  Once the plaintiff has done so, the Court must determine with reasonable certainty the appropriate award of damages.  Id.  Only if "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits," the Court may enter default judgment without a hearing on damages.  e360 Insight v. Spamhause Project, 500 F.3d 594, 602 (7th Cir. 2007).

Lastly, "[a] default judgment must not differ in kind, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  The requested relief in this case is:

> a. A declaration that Tokio Marine has fully complied with the terms and conditions of the Policy pursuant to the Claim;

    b. A declaration that no coverage is afforded for the Claim
       due to Springfield Shooting Center's criminal or
       dishonest acts;

    c. A declaration that no coverage is afforded for the Claim
       due to Springfield Shooting Center's conduct of
       intentionally concealing and misrepresenting material
       facts concerning the Claim;

    d. An award of attorneys' fees and costs; and

    e. Such other relief as the Court deems just.

Am. Compl. (d/e 30) at 11-14.

## III.   ANALYSIS

## A.   Defendant Springfield Shooting Center's Failure to Defend Entitles Plaintiff and Counter Claimant Swartz to Default.

Plaintiff Tokio Marine and Counter Claimant Steven and Shirley Swartz, who join in Plaintiff's Motion, move for a finding of default pursuant to Rule 55 as to Plaintiff's Counts I, II, and III and Counter Claimant's Count I. Rule 55(a) provides "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55. Of note, Kathryn Jackson, Springfield Shooting Center's only principal, takes no position regarding this motion.

As discussed *supra*, after Plaintiff filed its Amended Complaint Defendant Springfield Shooting Center answered the Amended Complaint and included a Counterclaim against Tokio Marine. (d/e 38). The next pleading filed on behalf of Springfield Shooting Center was Defense Counsel Scott Levin's Motion to Withdraw. (d/e 44). Magistrate Judge Schanzle-Haskins informed Springfield Shooting Center of the requirement that, as a corporation, it must appear by counsel in this matter. (March 1, 2019 Text Order). This directive was followed by the Court granting repeated extensions of time to find counsel. (April 8, 2019; April 22, 2019; April 30, 2019 Text Orders).

To date, Springfield Shooting Center has failed to secure counsel. Further, after the Motion to Withdraw, no other pleadings have been filed on behalf of Springfield Shooting Center in furtherance of their Counterclaim or in defense of the initial claim brought by Tokio Marine. The only filings were to provide documentation pursuant to the Court's Order to Show Cause. (June 19, 2019 Minute Entry; d/e 69, 70).

Here, Defendant Springfield Shooting Center has clearly failed to defend itself against the present litigation after its attorney withdrew. This lack of defense and the failure to prosecute its

counterclaim is shown by its lack of compliance with Court orders instructing them to obtain counsel. The Court questioned both John and Kathryn Jackson at multiple hearings regarding counsel and, to date, Springfield Shooting Center is still unrepresented.

In addition to Springfield Shooting Center's failure to retain counsel, Plaintiff alleges Defendant has failed to respond to any written discovery, subpoenas, and motions to compel. A review of the docket shows this lack of compliance not only with the Court's and Plaintiff's directives and discovery, but also Counter Claimants. This inaction has been ongoing for the last five years and such a lack of defense along with the sheer nonparticipation is clearly cause for a default finding.

Therefore, the Court finds Defendant Springfield Shooting Center, Inc. in default as to Counts I, II, and III of Plaintiff's Amended Complaint and Count I of Counter Claimants' Amended Complaint.

**B. Plaintiff and Counter Claimant are Entitled to the Declaratory Relief Sought.**

Tokio Marine is entitled to declaratory relief on each of Counts I, II, and III. First, the Court has jurisdiction to issue a declaratory judgment in its discretion because an actual controversy exists as a

result of Defendant Springfield Shooting Center's commercial policy with Tokio Marine, where Tokio Marine argues that coverage is inappropriate as a result of Defendant's actions.  28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such a declaration"); see Tempco Elec. Heater Corp. v. Omega Eng'g, Inc., 819 F.2d 746, 747 (7th Cir. 1987) (collecting cases).

Second, the policy factors governing declaratory judgments weigh in favor of granting Plaintiff's requested relief.  "The purposes of declaratory judgments are to "clarify[ ] and settl[e] the legal relations at issue" and to "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Tempco Elec. Heater Corp., 819 F.2d at 749 (internal citations omitted).  In exercising its discretion while considering whether to issue a declaratory judgment, "a federal court must consider the public interest and the plaintiff's need for the requested relief." Int'l Harvester Co. v. Deere & Co., 623 F.2d 1207, 1218 (7th Cir. 1980).

As discussed *supra*, this matter stems from a Tokio Marine commercial insurance policy, a fire at the commercial business which is the subject of said policy on September 6, 2017, and alleged arson and criminal charges levied against the owner of said commercial business, Springfield Shooting Center. During the pendency of this civil litigation other investigations were ongoing by the Department of Justice Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the Springfield Police Department. Many of the reports that Tokio Marine relies on in its motion are those received from the United States Attorney's Office for the Central District of Illinois in its prosecution of Springfield Shooting Center's owner John Jackson for the alleged criminal behavior that forms the basis of the claims here. (d/e 119, p. 5).

Tokio Marine first points to material misrepresentations as to business personal property that entitle Tokio to a default judgment. Specifically, this refers to firearms that were listed as stolen by the principal of Springfield Shooting Center, John Jackson, in his proof of loss statement. (d/e 119, p. 5, Exhibit 4). Plaintiff provides various ATF reports, police records, statements from witnesses and retail transaction records in support regarding at least two firearms that

were provided to an individual by John Jackson and then resold to the gun store at Scheels.

Comparing these records to the sworn statement made by John Jackson in Tokio Marine's investigation, wherein John Jackson testified that business property, namely nine firearms, including two of which were resold at Scheels, were stolen in the arson and burglary. This is clear evidence of a misrepresentation of not only the business personal property that was stolen, but also a misrepresentation of the signed proof of loss statement Mr. Jackson submitted.

Along with the misrepresentations in the proof of loss submitted, John Jackson and Kathryn Jackson were not truthful in their examinations under oath and their specific actions created this loss. At a date after Kathryn Jackson's examination pursuant to the insurance investigation, and with police officers present, Kathryn Jackson provided confirmation that she drove John Jackson to the vicinity of the premises on the night of the fire, that he was bringing home large amounts of personal and business property before and up to the date of the fire, and that he returned home smelling of gasoline/kerosene on the night in question. (d/e 119, Exhibit 5). In

addition, according to statements by Chad Murphy, Mr. Murphy was instructed to lie to the authorities by John Jackson as to their whereabouts on the night of the fire and to "not ask questions."

These misrepresentations, in reporting the facts and circumstances of the loss, specifically the items that were reported stolen, are material and their effect is that coverage is void. Further, insurance coverage should not be provided when intentional acts of a criminal nature are committed to ensure a financial windfall for a policy holder.

As to Steven and Shirley Swartz, who join in Plaintiff's Motion for Default and also seek declaratory relief, the default analysis is identical to the Court's above discussion with one key caveat, as Steven and Shirley Swartz are not insurance providers. Even with this distinction, public policy favors a declaratory judgment on Swartzs' behalf on their claim against Springfield Shooting Center. This is especially true as these Counter Claimants owned the premises that Springfield Shooting Center occupied, and Steven Swartz was selling the real property to John and Kathryn Jackson on an installment land sales contract. John Jackson likely set fire to the Springfield Shooting Center and caused damage to the premises in

excess of $1,500,000. <u>See</u> (d/e 64). Kathryn Jackson assisted in or knew of the commission of this crime and also made material representations as to the loss suffered by Springfield Shooting Center, and the involvement of her husband under oath.

Therefore, Plaintiff's Motion for Default Judgment (d/e 119) is GRANTED with respect to Plaintiff's request for declaratory relief on Counts I, II, and III of its First Amended Complaint and with respect to Counter Claimants request for judgment on Count I on their Counter Claim (d/e 64).

## C. Defendant Springfield Shooting Center Inc.'s Counterclaim is Dismissed for Failure to Prosecute this matter.

On January 3, 2018, Springfield Shooting Center asserted a counter claim for breach of contract and sought an award of policy benefits. (d/e 38). On March 1, 2019, counsel for Springfield Shooting Center was allowed to withdraw and the company directed to retain counsel. However, Springfield Shooting Center has failed to secure counsel for almost 5 years and has not prosecuted this claim despite repeated warnings from this Court.

District courts have the inherent authority to dismiss suits, even *sua sponte*, for failure to prosecute, so long as they exercise their discretion reasonably. Jenkins v. Miles, 553 Fed. Appx. 638, 639 (7th Cir. 2014). Scandia Down Corp. v. Euroquilt, Inc., 772 F.2d 1423 (7th Cir. 1985); Link v. Wabash R.R. Co., 370 U.S. 626, 630-33 (1962). This Court advised the principals of Springfield Shooting Company, both through text orders and orally at various hearings, that a corporation may only appear in Federal Court through an attorney. (March 1, 2019 Text Order, April 8, 2019 Text Order, April 30, 2019 Text Order, May 17, 2019).

Even after these specific warnings about the necessity of counsel and the Court's direction on who may or may not file pleadings, Springfield Shooting Center remains without counsel and has filed no pleadings through counsel to assist in their prosecution of their counter claim. Instead, after counsel withdrew in February 2019, the principals provided information to the Court that they were searching for counsel or needed additional time, but no attorney has appeared. This is even after a 3 year stay in this civil proceeding and the ongoing criminal matter which is now dismissed upon the death of John Jackson.

Given this failure to prosecute as evidenced by no counsel's appearance and absence of pleadings indicating any intent to prosecute the Jacksons' claim, the Court DISMISSES Springfield Shooting Center Inc.'s Counter Claim.

## IV.   CONCLUSION

For the above-stated reasons, Plaintiff's Motion for Entry of Default Judgment (d/e 119) is GRANTED.  The Court hereby awards Default Judgment for Plaintiff Tokio Marine Specialty Insurance Company and for Counter Claimants Steven and Shirley Swartz against Defendant Springfield Shooting Center, Inc. and its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them.

It is hereby ORDERED, ADJUDGED, and DECREED that:

a.  Tokio Marine has fully complied with the terms and conditions of the Policy pursuant to the Claim.

b. No coverage is afforded for the Claim due to Springfield Shooting Center's criminal or dishonest acts.

c. No coverage is afforded for the Claim due to Springfield Shooting Center's conduct of intentionally concealing and misrepresenting material facts concerning the Claim.

The Clerk is DIRECTED to issue a judgment reflective of this

Order.  The parties are DIRECTED to file any motions specifying

attorney's fees and costs on or before September 5, 2024.

**IT IS SO ORDERED.**
**ENTERED: August 21, 2024**
**FOR THE COURT**

*/s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**